UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CYNTHIA L. BAKER,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>CITY OF SEATAC, et al.,<br><br>　　　　　　Defendants. | CASE NO. C12-1985JLR<br><br>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## I.  INTRODUCTION

Before the court is Defendant City of SeaTac's ("City") and Defendant City Manager Todd Cutt's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Mot. (Dkt. # 30).) Plaintiff Cynthia Baker brings a claim under 42 U.S.C. § 1983, alleging that Defendants' actions in terminating her employment with the City violated her procedural due process rights. (Compl. (Dkt. # 1) ¶¶ 4.1-4.6.) Ms. Baker also brings a claim under Washington State law for wrongful discharge. (*Id.* ¶¶ 7.1-7.4.) Defendants argue that Ms. Bakers' claims fail as a matter of law. (*See*

ORDER- 1

*generally* Mot.)  Having considered the submissions of the parties, the balance of the record, and the relevant law, and no party having requested oral argument, the court DENIES Defendants' motion for summary judgment.

## II.    FACTUAL BACKGROUND

The City hired Ms. Baker as Community and Economic Development Department Director in February, 2011.  (Baker Decl. (Dkt. # 35 ) ¶ 4.)  In February, 2012, after concerns arose regarding Ms. Baker's management style, Mr. Cutts authorized an investigation by Human Resources Director Anh Hoang.  (Cutts Decl. (Dkt. # 33) ¶ 3.)  Over the next five months, Ms. Hoang interviewed numerous employees who reported to Ms. Baker, and reviewed relevant personnel files and documents.  (Hoang Decl. (Dkt. 33-1) Ex. 1 (Report) at 6-7.)

Ms. Hoang also interviewed Ms. Baker nine times, for a total of over 25 hours.  (*Id.* at 7.)  City Manager Mr. Cutts attended many of Ms. Baker's interviews.  (Cutts Decl. ¶ 5.)  City Attorney Mary Bartolo attended five.  (Bartolo Decl. (Dkt. # 31) ¶ 2.)  The City did not permit Ms. Baker's attorney, Mr. Rosen, to attend any of her interviews.  (Baker Decl. ¶ 13.)   Instead, Ms. Baker received audio recordings of her interviews, as well as "interview notes" from other employees' interviews.  (Bartolo Decl. ¶¶ 3-6.)

As the investigation continued, Mr. Cutts placed Ms. Baker on administrative leave on April 13, 2012.  (Baker Decl. ¶ 10.)  Ms. Hoang drafted a 48-page Personnel

ORDER- 2

Investigation Report ("Report") summarizing the results of her investigation.[1] (*See* Report.)  In the Report, Ms. Hoang concluded that Ms. Baker "has not demonstrated that she has this [sic] combination of skills to effectively lead this department." (*Id.*)  On July 17, 2012, Ms. Baker received a copy of the Report in conjunction with a "Pre-disciplinary Hearing Notice" ("Hearing Notice").  (*See* Cutts Decl. Ex. 13 (Hearing Notice).)

The Hearing Notice identified specific "Allegations of Misconduct" and listed Ms. Baker's "Alleged Violations" of the City's employee handbook and other policies.  (*Id.*) The Hearing Notice gave Ms. Baker only two days to respond, setting a hearing date for July 19, 2012.  (*Id.* at 1.)  At the request of Ms. Baker's attorney, the hearing was delayed until July 30, 2012.  (Resp. (Dkt. # 34) at 8.)  In the interim, Ms. Baker provided the City a 19-page written response.  (*See* Cutts Decl. Ex. 14.)

On July 30, 2012, Ms. Baker and Mr. Rosen attended a telephonic hearing with City employees Mr. Cutts, Ms. Bartolo, and Ms. Hoang.  (Cutts Decl. ¶ 10.)  On this telephone call, Ms. Baker requested and was granted an opportunity to submit a supplemental response.  (Cutts Decl. ¶11.)  On August 7, 2012, Ms. Baker hand-delivered to Ms. Bartolo an eight-page response that included almost 200 pages of attachments. (*See* Bartolo Decl. Ex. 1.)  The very next day, Mr. Cutts emailed Ms. Baker a "Notice of Discipline – Termination" ("Termination Notice") indicating that he had decided to

---

[1] Ms. Hoang's report contains hearsay statements by third-party city employees. The court does not consider this document for the truth of these statements, but rather as evidence of the scope of the investigation that Ms. Hoang conducted.  After all, Ms. Hoang would be able to testify about the scope of the investigation at trial.

terminate her employment, effective immediately. (*See* Cutts Decl. Ex. 15 (Termination Notice) at 5.)

Mr. Rosen wrote two letters to the City requesting a post-termination hearing for Ms. Baker. (*See* Rosen Decl. Ex. 1). The City denied these requests. (*See* Bartolo Decl. Ex. 2.) Ms. Baker filed this suit in November, 2012, alleging that the lack of post-termination hearing violated her procedural due process rights under the Fourteenth Amendment of the United States Constitution, and that she was wrongfully discharged under Washington State law. (*See generally* Compl.)

### III.  ANALYSIS

**A.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where (1) the moving party demonstrates the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material" for purposes of Rule 56 means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party "failed to make a

sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322-23.

Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. *Celotex*, 477 U.S. at 324. The non-moving party must provide affidavits or other sources of evidence that "set forth specific facts showing that there is a genuine issue for trial" from which a factfinder could reasonably render a verdict in the non-moving party's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 252. In determining whether the factfinder could reasonably render a verdict in the non-moving party's favor, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

**B.     Procedural Due Process Standard**

A procedural due process claim under 42 U.S.C. §1983 has two elements: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

Regarding the second element,[2] courts apply a balancing test to determine what procedural protections are adequate in each particular case. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Specifically, courts consider: "First, the private interest that will be

---

[2] For the purposes of this motion, Defendants do not dispute that Ms. Baker has a property interest in her employment with the City. (Mot. at 10.)

ORDER- 5

affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976). Whether the provided procedures satisfy due process is a legal question for the court to decide. *Walker v. City of Berkeley*, 951 F.2d 182, 184 (9th Cir. 1991).

In the context of public employment, the Supreme Court has defined a minimum floor for pre-deprivation process: before a public employee's employment is terminated, he is entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). In identifying this minimum floor, the Supreme Court relied on the fact that Ohio State law provided the employee in the case with a full evidentiary post-termination review. *Id.* at 548.

In general, the amounts of pre- and post-termination process required are relative: "The general rule is that the less the pre-deprivation process, the greater must be the post-deprivation process." *Cassim v. Bowen*, 824 F.2d 791, 798 (9th Cir. 1987); *see also Carter v. Western Reserve Psychiatric Habilitation Center,* 767 F.2d 270, 273 (6th Cir. 1985) ("[T]the required extent of post-termination procedures is inextricably intertwined with the scope of pre-termination procedures.") Therefore, even when pre-termination proceedings are provided, a court "must also independently assess the adequacy of the post-termination proceedings." *Clements v. Airport Auth. of Washoe Cnty.,* 69 F.3d 321,

332 (9th Cir. 1995); *see also Taylor v. City of Cheney*, 11-CV-0170-TOR, 2012 WL 5361424, at *5 (E.D. Wash. Oct. 31, 2012). ("[U]nder Ninth Circuit case law the Court *must* independently evaluate the post-termination process for due process violations.").

Other circuits' assessments of the balance between pre- and post-termination hearings are instructive. For instance, the Sixth Circuit held that, if only an abbreviated pre-termination hearing is provided, "due process requires that a discharged employee's post-termination hearing be substantially more "meaningful." *Mitchell v. Fankhauser*, 375 F.3d 477, 480-81 (6th Cir. 2004). At a minimum, this "requires that the discharged employee be permitted to attend the hearing, to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to know and have an opportunity to challenge the evidence against him." *Id.*, quoting *Carter*, 767 F.2d at 273. Similarly, the Seventh Circuit held that a pre-termination hearing "must fully satisfy the due process requirements of confrontation and cross-examination in addition to the minimal *Loudermill* requirements of notice and an opportunity to be heard" if a public employee does not receive a post-termination hearing. *Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205*, 389 F.3d 685, 692 (7th Cir. 2004).

**C.     Procedural Due Process Analysis**

The parties agree that the notice and hearing afforded Ms. Baker satisfy the minimal requirements of a *Loudermill* pre-termination hearing. (Resp. at 7; Mot. at 12.) They disagree, however, as to what additional process is due, if any. Ms. Baker argues that she is entitled to a post-termination hearing that includes the ability to present evidence and cross-examine witnesses. (Compl. ¶ 4.4; Resp. at 8.) Defendants maintain

ORDER- 7

that, as a matter of law, their pre-termination procedures were so "exhaustive" that they obviate the need for a post-termination hearing completely. (Mot. at 1.) Applying the *Mathews v. Eldridge* rubric, the court disagrees with Defendants that the pre-termination procedures alone constitute due process. Accordingly, the court denies Defendants' motion.

### 1. Ms. Baker's interest in employment

The first consideration under *Mathews* is "the private interest that will be affected by the official action." *Mathews*, 424 U.S. at 335. In the words of the Supreme Court, "the significance of the private interest in retaining employment cannot be gainsaid." *Loudermill*, 470 U.S. at 543. The interest is significant because "[w]hile a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job." *Id.* Indeed, courts have frequently recognized the severity of depriving a person of the means of livelihood. *Id.* (collecting cases). As such, Ms. Baker's interest in retaining her employment with the City is substantial.

### 2. Risk of erroneous deprivation and probable value of additional procedure

The second consideration under *Mathews* is "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews,* 424 U.S. at 335. Here, Defendants argue that their process was sufficient because (1) the City undertook a five month factual investigation, (2) Ms. Baker participated in multiple interviews during the investigation,

ORDER- 8

and (3) Ms. Baker had the opportunity to present rebuttal at the telephonic hearing and in two written responses.  (Mot. at 12-13.)

To begin, the investigation by the City is not a basis for finding due process.  Time spent by an employer marshalling evidence against an employee is no substitute for the employee's requisite opportunity to "present his side of the story."  *See Loudermill*, 470 U.S. at 546.

Similarly, Ms. Baker's interviews are not a basis for finding due process.  The parties offer contradictory characterizations of the content of these interviews. (*Compare* Cutts Decl. ¶¶ 5-6 ("During the interviews, Ms. Baker had and took full advantage of the opportunity to explain or rebut both the general and specific complaints her staff was making about her") *with* Baker Decl. ¶¶ 12-13 ("The questions in the interrogation were so vague that it was nearly impossible to know what I was being asked, much less how to answer."))  There is no dispute, however, that Ms. Baker was not informed of the specific allegations against her until after the interviews had concluded and she received the Hearing Notice.  (*See, e.g.*, Baker Decl. ¶¶ 2; 12-13; Cutts Decl. ¶ 5, 9; Hearing Notice at 1 (bullet-point list of alleged misconduct and violations of City policy).)  Accordingly, viewing the facts in the light most favorable to the non-moving party, these interviews did not constitute an opportunity for Ms. Baker to rebut the City's reasons for terminating her employment.

Lastly, the telephonic hearing and Ms. Baker's written responses, although perhaps exceeding *Loudermill*'s requirements, nonetheless engender an appreciable risk of erroneous deprivation.  Ms. Baker was permitted only ten days to prepare her

response to the charges against her (an increase from the two days the City originally budgeted). (Hearing Notice at 1; Resp. at 8). There were no witnesses present during the telephone call, and although Ms. Baker submitted a written response explaining her disagreement with the Report, she was not permitted to introduce evidence. (Cutts Decl. ¶¶ 10, 11; Bartolo Decl. Ex. 1.) The City admits that it considered the evidence that Ms. Baker later provided for less than one day before issuing the Termination Notice. (*See* Termination Notice at 2.) This Termination Notice is little more than a word-for-word recapitulation of the Hearing Notice; it does not address Ms. Baker's arguments or evidence in any substantive way. (*Compare* Termination Notice *with* Hearing Notice.) Given this summary treatment of Ms. Baker's response, the safeguard of a "second look" at the issues could go far to mitigating the risk of erroneous termination.

Moreover, Ms. Baker's termination was initiated due to and predicated almost entirely on complaints by other City employees. (*See, e.g.*, Report at 7-48 ("Section III: Discussion of Specific Complaints"); Termination Notice at 2 ("I have thoroughly reviewed the City's personnel investigation into employees' complaints and/or concerns . . . ."); Cutts Decl. ¶ 2). As such, an opportunity for Ms. Baker to confront the witnesses against her, as well as to put forth countervailing evidence, could provide a valuable check on the accuracy of the City's decision.

### 3. The City's interests

The third and final consideration under *Mathews* is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews,* 424 U.S. at 335.

The City argues that it has an interest in efficiently "removing a dysfunctional department head." (Mot. at 13.) Accepting that the Director of Community and Economic Development is a "key" position within the City bureaucracy, (Cutts Decl. ¶ 3), the court notes that this interest was lessened somewhat by the facts that Ms. Baker had already been placed on administrative leave for about three months by the time she received her pre-termination hearing, (Baker Decl. ¶ 10), and that Ms. Baker, although perhaps "dysfunctional," was not being terminated for illegal, dangerous, or other more concerning behavior, (*see, e.g.*, Report at 7; Hearing Notice at 1.)

The City also argues that it has an interest in avoiding the financial and administrative burden of an additional hearing at the end of a long investigation. (Reply at 2.) Although financial burden is a valid interest, the cost of the City's factual investigation should not be conflated with the cost of providing due process to Ms. Baker. The two are separate, and therefore, the cost of granting Ms. Baker a post-determination hearing appears no greater than that associated with the two-hearing process sanctioned by courts time and again since *Loudermill*. *See, e.g.*, *Walker*, 951 F.2d at 185; *Clement*, 69 F.3d at 334.

**4. Post-termination hearing**

After balancing the three *Mathews* considerations, the court cannot agree with Defendants' contention that the procedures afforded Ms. Baker to date constitute due process. *See Walker*, 951 F.2d at 184 (determining the adequacy of provided procedures is a legal question). To the contrary, the importance of Ms. Baker's employment interest and the likelihood that additional safeguards could serve as a meaningful check on the

ORDER- 11

City's termination decision would seem to outweigh the City's interest in avoiding the administrative burden associated with additional safeguards.

Other courts addressing an employer's denial of a post-termination hearing have reached the same conclusion. *See, e.g.*, *Mitchell*, 375 F.3d at 481 (reversing summary judgment because the discharged employee, despite being afforded a pre-termination hearing that defendants argued "was intended to take care of all the requirements of due process," was nonetheless entitled to a "more meaningful post-termination hearing"); *Carter*, 767 F.2d at 273 (reversing summary judgment because the employee's pre-termination hearing did not include the ability to call witnesses and present evidence, and "[t]he severity of depriving a person of the means of livelihood requires that such person have at least one opportunity for such a full hearing."); *Baird*, 389 F.3d at 693 (reversing summary judgment because defendant's self-described "generous" pre-termination procedures did not include, among other things, an effective opportunity to call and question witnesses); *Taylor*, 2012 WL 5361424, at *5 (denying summary judgment where defendant argued that discharged employee was not entitled to a post-deprivation hearing).

The City argues that the procedure it provided Ms. Baker exceeds the procedures at issue in these cases. Regardless, viewing the facts in the light most favorable to the non-moving party, the court cannot agree that the City's process rises to a level that would justify denying Ms. Baker post-termination process entirely. Therefore, the court denies Defendants' motion for summary judgment.

### D. Wrongful Discharge

The parties agree that, to the extent that Ms. Baker's wrongful termination claim sounds in contract rather than in tort, she is not required to comply with the filing requirements of RCW 49.60. (Reply (Dkt. #) at 5; Resp. at 21-23.) Ms. Baker has clarified that her wrongful termination claim is indeed a "breach of contract cause of action," (Resp. at 23), and that she "seeks only economic damages, including lost wages and benefits," (*id*. at 21; *see also* Compl. ¶¶ 7.2, 7.4). Therefore, Defendants' motion for summary judgment that Ms. Baker's wrongful termination claim fails to comply with RCW 49.60 is moot.

### IV. CONCLUSION

For the foregoing reasons, the court DENIES Defendants' motion for summary judgment (Dkt. # 30).

Dated this 21st day of October, 2013.

JAMES L. ROBART
United States District Judge

ORDER- 13